Case No. 19-7020, Chantal Attias. Individually and on behalf of all other citizens situated in L, Appellants v. CareFirst, Inc., doing business as Group Hospitalization and Medical Services, Inc. in L. Mr. Stonestreet for the appellants. Mr. Gatewood for the appellees. Good morning. Good morning, Your Honors, and may it please the Court. This circuit settled the dispositive issues presented in this appeal in OPM. Mitigation costs, credit monitoring costs, credit repair costs, and time lost as a result of a data breach are actual damages. On this basis alone, we ask that you reverse and remand the district court opinion so that this case may proceed beyond the pleading stage. Before we get to the merits, could you talk about the jurisdictional issue that we flagged? Yes, Your Honor, and in reviewing the Building v. Babbitt case, discussing the endangered species and the fairy shrimp, on the issue of the certification under Rule 54B, it is appellant's position that this court firmly possesses jurisdiction. The Building v. Babbitt case made clear that in assessing whether or not a 54B certification is proper, it is assessed under an abuse of discretion standard. The things that would be considered would be... But looking to the relatedness or not of the claims that you're trying to bring before us and the claims that are left in the district court. Yes, well, this is exactly the situation where a 54B is necessary because if this court were to determine it did not have jurisdiction and send it back down to the district court, the district court would then presumably enter a more clear order affirming that this court did have jurisdiction and we would be right back where we are. But more importantly, for the sake of... Well, but there are two possible problems here. One is that the district court didn't explain why it wanted to certify. But another one, regardless of any explanation, might be that the claims before the district court are entirely related to and bound up in the claims that are before us. They all arise out of the same data breach and they... The identical claims, a contract claim under Maryland law arising out of this breach is here and is also below. Your Honor, if we were to proceed below, it would go to final judgment at some point either way and we would be right back where we are with... And our main jurisdictional statute says we only take final judgments. And it was certified as a final judgment based on the inefficiency of proceeding with a very small percentage of the case and the risk of returning back to the district court and having to go through discovery and trial again. So it did support judicial economy and judicial efficiency to certify under Rule 54B. Make no mistake, the claims of the Tringlers, which were the only ones that were preserved, all of their other claims have been dismissed as well with the exception of two. So to return the case and determine that this court does not have jurisdiction will only guarantee that this case comes back up on appeal. The other reason to accept this certification of the judge is because the judge made it clear in its opinion, and I'll just read the quote, in reaching this outcome, the court acknowledges the difficulty of applying traditional tort and contract principles in the contemporary context of data security. So there you have the court requesting from this court some instruction. One business day before the appeal was filed in this case and after the district court made its ruling, the decision in OPM came out. And in the context of the privacy claim, OPM recognized the exact damages that were rejected by the district court. So where the district court would not recognize mitigation costs or credit repair, OPM specifically did recognize. The problem is with the Tringlers' claim, right? We have some of the Tringlers' claims in front of us and others not. And yet we said in the Tolson case in 1984, when claims are so closely related that they would fall afoul of the rule against splitting claims if brought separately, they do not qualify as separate claims within the meaning of Rule 54B. So how can we have some of the Tringlers' claims before us on appeal and others not when they all come out of the same operative set of facts? The reason that this court has all of the claims before it is because of the exception to the general rule under 54B where a district court can determine and give jurisdiction to appellate courts to provide instruction and to provide reasoning so that judicial— Under Tolson, that doesn't seem to be a power the district court has. It's also notable that those claims are stayed right now. Which cuts against you. Which proves that what's before us is intimately related to what's pending below. If what the court would be looking for is more clarity in the 54B order, I think it's important to recognize the policy behind 54B is to avoid piecemeal appeals. And what it will be guaranteeing if this is dismissed for lack of jurisdiction is that the case will be returned to this court in its third appeal in this case. No, but it won't be piecemeal. I don't deny that there's some intuitive force to what you're saying because it just seems to me that your point is, look, there's basically the same stuff going on anyway. We might as well get an early answer on it so that we don't have to go forward in the district court and really be told later on that we went forward to do something that we shouldn't have been doing anyway. That's kind of your argument is, look, why don't we just get an early assessment from the court of appeals on whether we should even go forward with claims that are really closely related to the ones that are up here. And that's just buying into the notion that all the claims are closely related and your point is just, well, let's get an early answer. And I'm not saying that that doesn't have some intuitive force in the abstract, but it just seems to run up against exactly what our cases say. For example, even in the building industry case, what we said is a district court should properly consider such factors as whether the claims under review were separable from the others and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once. Taking the same consideration you're pointing to and having it dictate the opposite conclusion, that precisely because they're intimately associated with one another, all the more reason not to certify and to have the proceedings go forward in the district court all the way to the end and then everything comes up at once. I guess the response, well, the first response to that is it is more than just a request for an early determination on some of these issues. It has now become, at least in appellate's opinion, that that early opinion has already been issued in OPM. That would be first. But secondly, I think what has happened with the Tringler's and everyone else's claim is that the court has made and ruled for a special arena of damages in the context of data breach cases. And the court has said, I must perceive a later actual misuse in identity to have to recognize any claims at all. So in that respect, that is a separable issue. So what the court would be looking at would be, is it correct to say, and it's interesting because OPM also had victims of tax refund fraud, but to say we recognize that that is separable and these other claims, which would be loss mitigation, credit repair, credit monitoring, is a separable damage that would impact nine of the claims in the vast, large majority of the putative class that this court could resolve. So it is separable conceptually because it was a false determination in distinction unique just to the data breach context that the court would require immediate misuse of data in order to proceed past the B6 stage. And that is what the reversible error is throughout the entire opinion, is this false distinction in damages in requiring an immediate misuse of the data. So we believe that the court does firmly possess jurisdiction. What we would ask is that— But do you think we firmly possess jurisdiction for the reason that all the district court had to do was make the certification that's called for by the letter of 54B, regardless of the reason why there's no just reason for delay? Because I read building industry to stand for the proposition that it's not enough just to encamp what the rule says. There also has to be a basis for understanding what the reason is for thinking there's no just reason for delay. And the district court didn't do that, in its order at least. It didn't expand upon the reason. So then the question becomes for us, do we look past the fact that there's no explanation on the face of the order and try to find an explanation from the record which may or may not be there, or do we not care about the fact that there's no explanation of the reasons for jurisdictional purposes? So, Your Honor, I think you do care, and you answered it yourself, Your Honor, in saying that you would look at the record. So in reading building v. Babbitt, it states that if it's self-evident from a review of the record, then you can possess jurisdiction. So I think you— Then that's your view, is that this is a case— So you think, A, we need to be able to find reasons as a jurisdictional matter, because I'm not even sure about that, actually. I'll bracket that. And then, B, you think this is a case in which the reasons are apparent from the record. That's exactly right, Your Honor. We believe that it is evident, to use the building v. Babbitt language, from the record that this court possesses jurisdiction, and we believe, to make the pragmatic point, that in viewing the 54B certification and determining that the language was not explanatory enough, it would really go against judicial economy and judicial administration because it could create duplicative discovery. It could create another delay and another piecemeal appeal. So the very public policy behind 54B supports that this panel would review the record and find that it does possess— And what does the record tell? If your argument is we look at the record and it's obvious, what is obvious? Well, this is what the record would tell, is that the case is at its inception and never again will this court have to determine if the pleading properly supports or properly alleges damages. That decision will never have to be made again. That can be made dispositively here today. Does the pleading allege actual damages sufficiently? That is a point that this court can rule upon and will never have to rule upon, and it has no risk of ruling upon again. But, I mean, you are making a classic argument for the 1292B certification. There is a threshold legal issue in the case that can be decided early and that will drive resolution of the case. That's a 1292B argument. It's not a 54B argument because the 54B law turns on relatedness of the claims, and you haven't given us any reason to think that the Tringler's breach of contract claim is transactionally unrelated to their negligence and fraud and statutory claims. You have a vehicle for making the argument you want to make. It's just not through a 54B certification. Interestingly enough, Your Honor, the record will show that the appellants asked for that type of certification, and the district court then issued an order and said, well, should we do it through the question 1292 route or should we do it through 54B? And then both parties, recognizing that proceeding through the case and doing discovery, when it would ultimately be appealed at the end, then said 54B would be acceptable to us, Your Honor. We can't do harmless error and say that it would be the same answer under 1292B anyway, right? So we have to address it as a 54B certification. I would just say that point is made to show that the record has more than just the limit. It appears that the court is highly concerned with the limited language in the 54B order, and I would just say that that is part of the record showing that the dispositive questions on this appeal, which is whether or not these types of damages will be recognized in this circuit, can be answered through OPM. So a simple reversal in remanding with instruction to follow the authority in OPM could address all of these issues efficiently for the parties, and that's what we're asking for. But even if all that happens is that it's improper under 54B, and suppose it goes back down, and then the district court says, all right, you know what, on reflection, it actually should have been a 1292B all along, so we'll do it under 1292B, and it comes back up. Well, then it's at least properly before us as a jurisdictional matter, and that would be acknowledging that it wasn't properly before us as a 54B matter, even if it seems like just a runaround. And understanding that point, I guess what the hopefully both parties, but particularly the plaintiffs, because the breach happened in 2014, what to avoid is sending it back down not only to send it immediately back up under 1292, when this court does have the discretion to look at the 54B order and determine this is enough of an issue and is separable enough of an issue to say that this is a final order and reverse it and recognize the same damages. But it just doesn't seem, I mean I hate to keep small, it just doesn't seem separable because it seems like everything you're saying bolsters the proposition that you made in the district court, which is, look, you definitely should stay everything that's pending right now because it's completely bound up in what's up on appeal. There's no sense in going forward. And all of that just seems like a great argument for why this isn't a 54B case. Even if the parties hadn't thought of it that way before, it all seems to support the proposition that this isn't typically what we look at in a 54B context. If your honors are willing to accept the same exact issues under 1292, what we would request from the court is an additional review under Building v. Babbitt of the record to determine if it can be apparent for you all to possess jurisdiction so that this case can move forward. It is still at the inception of the case. Can I ask you one question? I know we've taken your time with the jurisdictional question, but obviously it's important because we have to determine whether we have the authority to even have this case. So one possible way to look at the 54B question, and I just ask for your reaction on this, is that under Building and the under Building Industries case, the jurisdictional requirement is that the 54B certification be made by the district court. The district court encamp the appropriate words and make the determination. And one way to look at it, possibly, I'm not saying I necessarily think this is right, but it's possible, is that the district court did do that here. And then there's the second question of whether there's an adequate explanation of the reasons why there's no just reason for delay. And as to that, one possible way to look at it is, we'll look as to that, that part of it isn't jurisdictional. That part of it has to be flagged by somebody who's objecting on appeal. And in this case, there was no objection made by anybody, that there was no adequate explanation of the reasons. Because as I understand Building Industries, I think the appellee there actually raised an objection. And then the argument would be, well, as to that, it's an abuse of discretion review where somebody actually flags it. But it's not jurisdictional in the sense that the court has to notice it of its own volition even if nobody flagged it. Yes. Yes, Your Honor. And no one did object. And in discussions with appellees' counsel, we understand that they still do not object to this court possessing jurisdiction. That is a distinction in the case. No one's objected to it. And, I mean, frankly the only problem with that is that policing the limits of the 54B certification is designed not to protect the rights of litigants, but the integrity of the final judgment rule, which is our issue. Yes. And that's well taken, Your Honor. The lack of explanatory language in the 54B order could still be reviewed based on Building v. Tabot in the narrow lens of abuse of discretion to confer jurisdiction of this court. So this court could still determine, although it's not to the explanation, to give us the full explanation that we would appreciate because no one has objected, because of the progress and record of this case, that we still would accept jurisdiction and make rulings on the issue. If it's okay with Your Honors, could I address just a few of them? We'll give you time, but let me just ask one more question along these lines, which is assume for the sake of argument that I think 54B is all about interrelatedness of the claims and the argument you want to make just goes under the 1292B bucket. 54B is about interrelatedness. Is there any explanation that the district court could have given or could give on remand that what's before us is not interrelated with what's pending below? I think the argument for that, that it's not interrelated, is that this is a field of damages for all of the claims, not just the Tringlers. This is a field of damages for all of the claims that the district court refuses to recognize. So that would be the unrelated separable issue is that this is a field of damages that the court refused to recognize, so it should be addressed by this court, and it's our position that it already has been addressed by this circuit in OPM because of the exact damages that OPM recognized, including credit repair. But don't you need to show that what's in front of us is not related to what's still in the district court? That's the interrelatedness question. So how would you answer that? How would you say what's still down at the district court on the Tringlers claim is fundamentally different from what's on appeal? Okay, so the fundamental difference would be that really the only things that the Tringlers could get were the immediate out-of-pocket loss after the breach, which is not the question on this appeal, that you have immediate misuse of data. The real question on this appeal is are reasonable mitigation efforts, even without later misuse, actual damages? That's the real question on this appeal. So that is a separable question that can be distinctly answered for this court. But then why stay the things in the district court? It's hard for me to see how two things can be true. That was essentially for the—that was just a preservation of the party's resources, Your Honor, to not proceed through discovery and then wait for the appellate opinion and then go back through discovery. So that's effectively why that was stayed. Well, why not go through discovery if it's on a different issue? Why would anything that's going to happen up here affect that? It seems to me that a judgment was made that, in fact, they are. There were concerns because it's a putative class of moving forward with some of the claims for the appellants and not the vast majority of the other ones. So that was the primary reason for the appellants. But CARE First did not consent to the stay or agree with the stay. So I wouldn't take that as indicative of whether or not they're related. It really was just a matter of the plaintiff trying to properly maintain this putative class for the million customers of CARE First in this case. Let's go with the merits. Okay. Thank you, Your Honor. In going to the merits, I first want to address the District of Columbia Consumer Protection and Procedures Act claim, which is one of the strongest claims in the case. And that claim has been eliminated for everyone. That claim does not exist anymore. This claim is predicated on two things, the misrepresentations that CARE First would safeguard data but also the specific misrepresentation that the data would be encrypted. Failing to encrypt the data made it both more accessible and more valuable to the data thieves who still possess it to this day. So that is a material misrepresentation. This is a claim that should not have been dismissed by the district court. Your Honors can look at the Velkoff v. MedStar opinion, where the District of Columbia Court of Appeals ruled in the context of a data breach. Where it was dismissed at the trial level, the Court of Appeals of the District of Columbia ruled that the District of Columbia Consumer Protection and Procedures Act claim should persist and reverse the dismissal under 12B6, which is exactly what happened in this case to the district court. That is a 2018 opinion, and the district court should have applied it. And the consumer claim is a strong claim. It should have persisted. It's also the appellant's position that the case of Koharis was too broadly applied. First, because Koharis v. State Farm itself went to the summary judgment stage. This case is still in its inception at the 12B stage. So to take the summary judgment opinion of Koharis, which had the benefit of discovery, and rule that there's no way any of the plaintiffs in this case could maintain any torts, was reversible error. In effect, we're asking for this court to follow the circus logic. Tell me about your argument about Randolph. Why doesn't Randolph eliminate your mitigation? The reason is we have to follow Randolph. You do not have to follow Randolph. You do not have to follow Randolph because Velkoff was in 2018, and Velkoff was clear that in the context of a data breach, first you have standing, which is a different ruling than Randolph, where they ruled Randolph did not have standing, and then second, that the claims could persist past the damages phase. So if this court is looking for a District of Columbia Court of Appeals case to find instructive, it should take the more recent analysis in Velkoff. The fact that Randolph, and also Randolph was the stealing of a laptop, Your Honor. I'm sorry. I'm not recognizing the Velkoff case, and maybe that's my fault, but is it in your brief? I'm not either. I don't believe that it was, Your Honor. Well, why not? It seems to be absolutely critical to the argument you're making to me right now. You argued Randolph. That's what I'm prepared to talk about and understand. Why are we getting a new case here? I came across it. It seemed like a very strong and good case, and I don't know if perhaps it came out later. You know the rules. Yes. So let's. Okay. Well, okay. I'll discuss Randolph. Yeah, discuss Randolph. That's the horse you rode in here on. You stay on that horse if you want. The other reason that Randolph should not be relied upon by this court is because it was the stealing of a laptop, which is hardware, which is the same as SAIC. So there's a field of data breach opinions that recognize if it's just a laptop that's taken or a tablet, that could just be a regular thief who was stealing hardware. Isn't this the type of thing that we certify to the D.C. court? They haven't had a data breach case like this, right? At least they didn't have it in Randolph. Are you telling me Velkoff is a data breach case? Okay. So, well, I believe that Velkoff ruled that you do have standing in a data breach and you do have consumer claims from the. . . I don't know anything about. . . But to answer your question, because Epic also, in its amicus brief, I think asked the court to certify. The appellants would prefer the reversal in remand with instruction to proceed and follow the. . . But we're here in diversity. We have to follow the law of the District of Columbia. We don't get to decide what that law ought to be, right? Yes, Your Honor. And that's the problem with your OPM argument. We just don't get to do that. In the order of preference for the appellants being dismissal of the appeal, reversal, and certification to the District of Columbia Court of Appeals, certification would be the second. Did you ask us to certify? We did not request that. We requested reversal. I know that the amicus brief requested that certified question from reviewing the briefs at hand. I'm just wondering, if we don't have a case from the District of Columbia that resolves the question clearly, and you're saying Randolph does not, right? Randolph does not. Does not. Then why isn't that what a court sitting in diversity is supposed to do? The reason that the appellants believe that reversal would be necessary is because the exact damages in this case that the district court refused to recognize have been recognized by the circuit. So that's why the appellants are requesting. But not under D.C. law, right? But damages presumably would be damages. So damages in the context of the Privacy Act, which in fact has a heightened requirement for damages. It required a pecuniary loss. Here the bar is low. But we don't know what the answer is under D.C. law, and that's the law that we have to apply. That's correct, Your Honor. That is correct. So the appellants are asking for the reversal and remand. Thank you, Your Honors. Thank you very much. Good morning, Your Honors. Let's do jurisdiction first. Absolutely. May it please the court, Matt Gaywood on behalf of the appellees. I think there are two concepts on the jurisdictional point that there was some conflation during Mr. Stonestreet's argument. One is the jurisdictional prerequisite. What actually gives the court jurisdiction? And that's mandated by the rule itself. The district court has to expressly determine that there's no just reason for delay, and it has to be a final judgment. There's no question in this case that the jurisdictional bar has been met. The question is, and it's the second point, the second point is, is it evident that the district court did not abuse its discretion in making the certification? And you don't think that's jurisdictional? It's not part of the inquiry? You don't think it's jurisdictional? So, for example, there's a Fifth Circuit case this year that looked specifically at that issue and said that the statement of reasons is not a jurisdictional bar. What's the Fifth Circuit case? It's Johnson v. Ocwen Loan Servicing, 916 F3rd 505. The Third Circuit has also expressly looked at that issue, and for a long time in the Third Circuit they viewed it as a jurisdictional bar, and then it was determined in a later case that it's not a jurisdictional bar. Well, it's one thing to say that giving a statement of reasons is not required, much less a jurisdictional prerequisite. It's a different thing to say that when we review substantively, even if we think there's no requirement to state reasons, it's still very clear under Sears-Robick and those cases that we actually have to review the interrelatedness of the claims. That's right, and that's the second point. Are you saying that substantive inquiry is not jurisdictional? I'm saying it's not jurisdictional. It's part of this Court's analysis to determine whether the district court abused its discretion in making the certification order, and really that second bucket is the key for this Court. Did the district court abuse its discretion? We would say it did not. The Supreme Court has been clear in Curtis-Wright and Sears that the district court has significant discretion in determining whether to certify under 54B or not. Likewise said that the criterion for evaluating the discretion is the relatedness of the claims. That's right. Curtis-Wright's case especially made clear what to look for in determining. What is the colorable argument giving some degree of discretion to the district court? What's the colorable argument that the claims before us are unrelated to the claims pending below? They are absolutely unrelated, and the district court made this clear if you look at the record. There are two buckets of claims before you. One is all of the tort claims from every one of the named plaintiffs, including the Trendlers. The district court dismissed all of them and entered a final judgment on all of them. That's one bucket. I think that's an easier bucket in explaining the difference between what is left at the district court versus what is here. Sorry, say it one more time. All of the tort claims brought by all of the named plaintiffs. The district court said as a matter of law, as a matter of D.C. law, what's being stated in these alleged tort claims do not constitute viable causes of action that the case can move forward into discovery. So as a matter of law, this court must decide whether any named plaintiff can bring the tort claims that are being alleged in the complaint. That's the first bucket. The second bucket is the damages issue for all those claims that require actual damages to proceed, an allegation of actual damages. The district court carved out the two named plaintiffs, and he was very explicit in this. The district court carved out the two named plaintiffs that alleged exposure to their data plus actual misuse. So let's just take those one at a time. Sure. Okay, the tort claims. You still have... There are five tort claims. Right. I mean, you know, the way I was thinking about it is you have 11 claims and five sets of plaintiffs, right? There are seven named plaintiffs. Right, but I'm counting the tremors. All seven are here on appeal with respect to the tort claims. I understand that, but the possible permutations of plaintiffs and claims, if you count the Tremblers and the Bailey's as one set, is there are 55 different boxes in the matrix of five plaintiffs and 11 claims, and 53 of them are before us, and two are not. It's actually more than 53. Which is a really weird... But there are 11 causes of action. For instance, on the Tremblers' contract claim versus tort claims, number one, they arise out of the same set of operative facts, and number two, a lot of the legal issues on the merits turn on arguments about the extent to which tort claims are or are not viable because they may or may not be essentially mispleaded contract claims. But the issues that this court has to decide in deciding this appeal are not intertwined with the same issues of law with the claims that are remaining at the district court, and this is what was key in the Babbitt case. So if you look at the two issues in Babbitt, the one that was decided by the district court and the one that came to the circuit on appeal, the two issues related to the Fish and Wildlife Service decision to list certain species of fairy shrimp as critically endangered. That's one of the issues. Should the species have been listed as critically endangered? The second issue that was not decided by the district court, that was remanded to the Department of Interior, was should the habitat where the shrimp live, should it be listed as a critical habitat under the Endangered Species Act? This court in its penultimate paragraph in Babbitt when it was looking at the 54B certification, it specifically said that the issues of fact and law with respect to these two issues before it were so intertwined that by us deciding the issue that was before them at the time, there's no guarantee that we wouldn't have to decide this again down the road. In those two issues, they're both required by the Secretary of Interior to make those two decisions within the same section of the Endangered Species Act, and the Secretary of Interior is actually supposed to make both those determinations concurrently according to the Act. So they are inherently intertwined. The two issues are intertwined. That was one of the reasons that Babbitt couldn't look at the record where you have just the one-page certification order from the district court and say that it was clear from the rest of the record that we should hear the issue that is on appeal because there was no guarantee in that case that you wouldn't have to decide the issue again down the road. Here, there's no risk of that because the two issues before this court, there's no chance that you have to decide these two issues again. The one is, can anybody bring a tort claim? And two is, does an individual that has data exposure but no misuse, do they allege actual damages? Those issues are not going to come back to this court at any point in time. Yeah, I understand. I mean it just feels to me a lot more like a 1292B argument than a 54B argument. I mean suppose— Maybe so, but the district court— a two-count complaint for strict liability and negligence arising from—in a products liability context. And on a motion to dismiss, district court says—district court sitting in diversity says, the law of this state does not recognize strict liability. I'm dismissing that claim. Let's go to discovery on the negligence claim. Can that be certified under 54B on the theory that, well, the existence of strict liability under state law is a discreet, severable issue that's not going to come up again? If the district court believes it could be certified, it can be certified given the significant discretion that the Supreme Court has said that the district judge has. And the key is whether the district judge is making that decision in the interest of sound judicial administration. That's the language that's in the Curtis Wright case, and I think it may be in the Sears case as well. Why does everything stay in the district court? Because when I looked at the papers, the district judge in his 54B certification says, pursuant to Federal Rule of Civil Procedure 54B and upon consideration of the party's responses to the court's February 14th minute order, and then cites two documents. And when I looked at those documents, the documents seem to indicate that it makes good sense to stay everything because it's intimately bound up with what's on appeal. I disagree with that characterization. The appellants specifically ask for a stay of the Tringler's part of the case while the rest of the case goes up on appeal. Before we had an opportunity to file a response to that request that they made to the court, and I think it was either a day later, maybe the same day, or a day later, I can't remember the dates, the court issued the ruling staying the rest of the case without us having an appropriate amount of time to respond to that. Wasn't that the basis for asking for the stay? That things were bound up and so there's no reason to go forward now? Or am I not remembering that correctly? We did not ask for the stay. The other side did. I think in part it's because of what Mr. Stonestreet said. It's a putative class action. So the next stage in the case, presumably, from the appellant's standpoint, is to try to certify a class. And it presumably does not make sense to try to do that until everyone is absolutely sure of what name plaintiffs are named plaintiffs and is trying to certify a class on behalf of them. So I think there's a little more nuance than just waiting for these issues to be resolved. I'm also unaware of the case that Mr. Stonestreet just referenced, but this is not a case where even the certification of the D.C. Court of Appeals is necessary because the standard for a certified question is, is the local law genuinely unclear? And under Randolph, it's not genuinely unclear. The district court didn't think so. Randolph is clear that mitigation damages, costs of credit monitoring, do not qualify. On damages, let's back up a little bit. Wasn't the district court wrong to state that actual damages are an element of breach of contract claim under D.C. law, given that nominal damages are always available for breach of contract? I think the key is that damages are a requirement of breach of contract. That's what we have argued. We've got D.C. law, Francis v. Raven, Wright v. Howard University, who says that you get an award of nominal damages for breach of contract. So why? Right, but some damages still have to be alleged. Why? Why? They come with the breach of contract. If you establish breach of contract under D.C. law, you get damages. Why do you think that they have to be alleged? Here we go. Reading from Francis v. Raven. Under District of Columbia law, plaintiffs are not required to allege the damages caused by a breach of contract to survive a Rule 12b-6 motion to dismiss. Wright v. Howard. The absence of specific monetary injury does not prevent the accrual of a cause of action for breach of contract. Even where monetary damages cannot be proved, a plaintiff who can establish a breach of contract is entitled to an award of nominal damages. No, you don't. Okay, that's not even getting to the litigation and overpayment claims. Okay, I understand. Okay. That argument hasn't been made, as far as I know. No, it's not been made. Kind of critical, isn't it? It's a fundamental misstatement of D.C. law that the district court wouldn't be. If I'm understanding this correctly. I'm not sure, Your Honor. I've not reviewed those cases. So if we reverse on that point, on the contract claim, do you still – that was put to us about whether things like mitigation expenses or benefit of the bargain are non-nominal damages adequately pleaded in this case? Do you want us to separately address those questions, even if the breach of contract claim has to go back, at least for nominal? I think we have to, yes. I don't think we have to, but, I mean, if we're buying into your argument about loose, piecemeal appeals to resolve issues sooner rather than later, presumably we might want to. Well, there are other causes of action that require actual damages more sufficiently than the cases that Judge Griffith just read. For example, the tort claims were originally dismissed for lack of damages. Yeah, tort claims seem to me different. And there are other claims that were dismissed for lack of damages as well that are not just a breach of contract claim. Well, we don't need to go to the damages on the tort claims. I mean, that's – I thought your argument there, the district court's argument there is they're duplicative. Well, the district court actually dismissed them for lack of damages first. Then he alternatively, he said even if they had fled damages, they can't bring these tort claims for reasons X, Y, and Z. Specifically that the alleged misconduct that appellants raise for the tort claims derives specifically from the same misconduct that comes from the contract claim. Can I ask you about the D.C. consumer protection claims? That seems to me the other one that's strong for your opponents. So why does that claim require any allegation of damages? It doesn't, and we didn't argue that it did, Your Honor. The reason that that claim fails is because it also – So your only argument is because it's bound up in the contract. That's right. Why is that? Because the D.C. Court of Appeals – I'm sorry, it may be a district court case interpreting the D.C. Court of Appeals, but the Slensky case specifically addresses allegations made under a breach of contract versus under the D.C. Consumer Protection Act. And when it's bound up in the exact same alleged misconduct, there's not a cause of action under the D.C. Consumer Protection Act. Why would that – it just seems hard to square with how consumer protection statutes work, right? The classic – I mean, consumer protection statutes expand on common law fraud claims, and a classic common law fraud claim is a Huckster salesman makes misleading representations to prospective consumers to try to induce them to enter into a commercial contract and buy something that is a substandard good. In your example, though, there's not – the claim would not be a breach of contract claim. I mean, the claim would arise from allegedly fraudulent activity prior to an increasement of the contract. Right, but that seems like the kind of thing that's in the heartland of a normal consumer protection statute. I mean, the statute is pretty broadly written. It picks up conduct that would constitute fraud as well as simply making a representation that a good has a characteristic that it doesn't have. But the case law, at least in D.C., appears clear that as long as it's the same alleged misconduct, that the breach of contract also claims that the cause of action under the Consumer Protection Act. But I think the question is whether that – that may be true if you buy the premise that in this case, the tort part of it is bound up with the contract part of it. But you could also view it as there's two different things being alleged. One is that if the Internet policy is bound up with the contract, then it's effectively a breach of contract claim. But then there's another claim in the alternative that, look, even if it's not, even if it's separate from the contract, then we still have tort liability predicated on a breach of the Internet privacy policy. And then you don't have the problem that it's bound up with the contract claim. That argument was made in Appellant's reply brief. I think that argument, though, is not sustainable when you look at this complaint and you see what actually is alleged. The complaint specifically brings the privacy policy within the four corners of the contract. It does, but the question is whether it does that exclusively. I think it's fair to say that it's part of the contract claim. But the question is then is there also a separate claim that says, look, even if we don't look at the Internet policy as bound up in the contract claim, it still creates a predicate for tort liability. But if you do the latter, there is no contract claim. That is the breach of contract claim. But can't they plead it in the alternative? They plead it in the alternative. They give up. They're just saying, yeah, maybe it's true. They can't. We don't believe that this complaint actually does that. But if they did, it would be okay to say there are misleading statements in the Internet privacy policy. If they're part of the contract, we claim breach of contract. If they're not, we claim fraud and consumer protection. I haven't seen a D.C. Court of Appeals decision addressing that specific type of complaint. Based on your hypothetical, I think so. It just seems like it's alternative pleading. I think so. We just don't have that here. And the cases that you're relying on don't address that situation. They address a situation in which there is only a contract claim. It's all bound up in the contract. You don't have the pleading in the alternative. Well, in those cases, they're trying to bring tort claims and also D.C. Consumer Protection Act claims, but also a contract claim. Right. That's right. Thank you, Your Honor. First, I want to begin with saying that we do—and obviously we agree that there has been appellate jurisdiction conferred to this court with respect to Mr. Gatewood's arguments on 54B. I do want to address Judge Katz's point on the consumer protection claim and the statutory schematic and how this complaint was pled because we're the ones who drafted it. This is how it was pled. Breach of contract, express or implied, unjust enrichment, and a consumer protection claim. So already, Your Honors can see that there was pleading in the alternative, so that was exactly right. And even more to Judge Katz's point, if there are—the entire point of consumer protection statutes are to provide additional relief. The interpretation of the district court that a contract could abrogate those claims would mean there's no such thing as Lemon Law protections. There's no such thing as misrepresenting the type of product that consumers are buying where there would be contracts. So that is exactly on point in the—the misrepresentation that this data was encrypted is critical because it made the information stolen more valuable and more accessible to the data thieves who still possess it. So those were the points that we wanted to address to the court. So what do you make of Coharris? I mean, I agree with everything you just said about both consumer protection and fraud. And moreover, I mean, I find it implausible even as to negligence, right? I mean, doctor gets sued for malpractice. He's only doing the operation because he has a contractual relationship with the patient. But all of that said, Coharris says what it says and says if something is bound up in the contract, then no tort claims. I think the real distinction in Coharris is first that it was at the summary judgment stage. And as Your Honors have keyed in on, this is a pleading dismissal. So to make the determination based on Coharris, which that case itself, it was a broken radiator and a claim made to State Farm and Insurance, was able to proceed to discovery to see if it could support the tort claim. So the issue that there could be separate tortious conduct to support a claim, which could be a fact here to support a negligence claim, has never been developed. So it was premature for the district court to apply Coharris and dismiss every single court claim, which Mr. Gatewood informed the court it was important for the 54B issue that all of those tort claims are before the court. Suppose the Internet policy were a contract term. Would Coharris bar fraud and DCCPA claims for the misleading aspect of that contract term? It is our position that it would not because Coharris would dismiss tort claims, not the Consumer Protection Act claims and not the other claims that are in the complaint. But I think it's a difficult position that the case is in because a lot of what has happened in recognizing, like Your Honor did with contract damages and Your Honor did with consumer protection, $1,500 damages, which was conceded, that's a damage. All of these damages are real damages that this circuit has repeatedly recognized and because when we asked for the 54B ruling, but now because of the difficult appellate jurisdictional issues, really what we're requesting jointly from the defendant is that this court take a look at that record and see if there is a way to make it evident from the record that this court can possess firmly jurisdiction and let this case begin. Thank you, Your Honors. Thank you very much. Case is submitted. Case is submitted.
judges: Griffith, Srinivasan, Katsas